IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AEGIS DEFENSE SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15cv0320 (CMH/JFA) |
| | ) | |
| INTEGRATED SYSTEMS | ) | |
| IMPROVEMENT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's Motion for Default Judgment and Request for an Evidentiary Hearing. (Docket no. 34). In this action, Aegis Defense Services, LLC ("plaintiff" or "Aegis") seeks a default judgment against defendant Integrated Systems Improvement Services, Inc. ("defendant" or "SIS"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

Plaintiff filed the complaint in this action on March 11, 2015. (Docket no. 1) ("Compl."). Upon the filing of the complaint, a summons was issued for service on SIS. (Docket no. 2). On March 13, 2015, plaintiff served a copy of the summons and complaint on SIS's Human Resources Director, Marcina Rivera,[1] located at 221 North Kansas Street, El Paso, Texas 79901 ("El Paso location"). (Docket no. 3). On April 3, 2015, Bruce M. Blanchard, Jonathan D. Frieden, and Leigh M. Winstead of Odin, Feldman & Pittleman, P.C. filed a notice of appearance

---

[1] SIS's Human Resources Director has been referred to as "Macrina Rivera" and "Marcina Rivera" in affidavits of service filed by plaintiff. (Docket nos. 3 at 2, 28-1 at 2, 29-1 at 1).

of counsel on behalf of SIS. (Docket no. 5). Also on April 3, 2015, SIS filed its answer to plaintiff's complaint as well as a counterclaim against plaintiff for breach of contract. (Docket no. 6). Plaintiff filed its answer to SIS's counterclaim on April 27, 2015. (Docket no. 11). On July 28, 2015, the District Judge issued a scheduling order, which provided that a Federal Rule of Civil Procedure 16(b) pretrial conference was to be held at 11:00 a.m. on Wednesday, August 26, 2015 before the undersigned magistrate judge; discovery was to be completed by December 11, 2015; and a final pretrial conference was to be held on Thursday, December 17, 2015 at 10:00 a.m. (Docket no. 12).

On August 10, 2015, SIS filed a notice of withdrawal of attorney Leigh M. Winstead as a counsel of record for the defendant (Docket no. 13) that the undersigned magistrate judge granted on August 24, 2015 (Docket no. 16). On August 14, 2015, defendant filed a notice of appearance of counsel that provided that Sally Ann Hostetler would also appear as counsel of record for the defendant. (Docket no. 14). The parties filed a joint discovery plan on August 19, 2015 (Docket no. 15) and appeared at the initial pretrial conference held on Wednesday, August 26, 2015 before the undersigned magistrate judge (Docket no. 17). On August 26, 2015, the undersigned magistrate judge entered a Rule 16(B) Scheduling Order that approved the parties' joint discovery plan in part. (Docket no. 18).

On September 14, 2015, defendant's counsel filed a motion requesting that Sally Ann Hostetler, Bruce Blanchard, and Jonathan Friedan of Odin, Feldman & Pittleman, P.C. be permitted to withdraw as counsel of record for the defendant. (Docket no. 20) ("motion to withdraw"). The motion to withdraw indicated that on September 10, 2015, defendant's Executive Vice President, Luis A. Vega, informed Ms. Hostetler, Mr. Blanchard, and Mr. Friedan by letter that the defendant wished to terminate their representation on its behalf.

(Docket no. 20-1). The motion to withdraw was noticed for a hearing on Friday, September 25, 2015. (Docket no. 22). On Friday, September 25, 2015, Sally Ann Hostetler appeared before the court to present argument on the motion to withdraw. Upon consideration of the motion and the incorporated memorandum in support, the undersigned magistrate judge granted the motion to withdraw. (Docket no. 24) ("Order"). In the Order, the undersigned magistrate judge ordered that the defendant shall have ten days for substitute counsel to make an appearance on its behalf and indicated that defendant's failure to have counsel make an appearance on its behalf by this deadline may result in the dismissal of defendant's counterclaim and the entry of default judgment against it. *Id.* The Order was mailed to Garylene Javier, Integrated Systems Improvement Services, 1300 Pennsylvania Avenue, N.W., Suite 700, Washington, D.C. 20004— defendant's Washington, D.C. location. The time for defendant to have substitute counsel make an appearance expired on October 5, 2015 without substitute counsel having made any appearance.

On October 7, 2015, plaintiff filed a motion for entry of default against defendant (Docket no. 26) and noticed the motion for a hearing on October 16, 2015 (Docket no. 27). Defendant was served with plaintiff's motion for entry of default on October 8, 2015 at its El Paso location (Docket no. 28) and with plaintiff's notice of hearing on October 9, 2015 at its El Paso location (Docket no. 29). On October 16, 2015, counsel for the plaintiff and for the first time, substitute counsel for defendant appeared before the court to present argument on plaintiff's motion for entry of default. (Docket no. 30). On October 16, 2015, the undersigned magistrate judge entered an order requesting that the Clerk of Court enter a default as to the defendant pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 31). Also on October

16, 2015, John A. Bonello and Thomas K. David of David, Brody & Dondershine, LLP entered an appearance on behalf of defendant. (Docket no. 32).

On October 19, 2015, the Clerk of Court entered default against defendant pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 33). On October 30, 2015, plaintiff filed a motion for default judgment and request for an evidentiary hearing and incorporated memorandum in support (Docket no. 34) ("motion for default judgment"). Plaintiff noticed its motion for default judgment for a hearing on Friday, November 6, 2015. (Docket no. 35). Defendant filed its opposition to plaintiff's motion for default judgment on November 4, 2015. (Docket no. 40). On November 4, 2015, defendant also filed a motion to set aside default (Docket no. 37) and a memorandum in support (Docket no. 38) and noticed the motion to set aside default for a hearing on Friday, November 20, 2015 (Docket no. 39). On November 5, 2015, the undersigned cancelled the November 6, 2015 hearing on plaintiff's motion for default judgment and directed that the court would hold a hearing on defendant's motion to set aside default on Friday, November 20, 2015, and if necessary, hold a hearing on plaintiff's motion for default judgment on Friday, December 4, 2015. (Docket no. 41). Plaintiff filed its opposition to defendant's motion to set aside default on November 16, 2015. (Docket no. 42). On November 17, 2015, defendant filed a motion to vacate memorandum of law in support of motion to set aside default, including exhibit B to memorandum (Docket no. 43) and a memorandum in support (Docket no. 44) and noticed the motion for a hearing on December 4, 2015 (Docket no. 45). Accordingly, on November 17, 2015, defendant also filed an amended memorandum in support of its motion to set aside default. (Docket no. 46). On Friday, November 20, 2015, counsel for the parties appeared before the court to present argument on defendant's motion to set aside default. (Docket no. 47). The court granted defendant's motion to vacate memorandum

of law in support of motion to set aside default, including exhibit B to memorandum and denied

defendant's motion to set aside default. (Docket no. 48). Consequently, the court directed that it

would hold a hearing on plaintiff's motion for default judgment on Friday, December 4, 2015 at

10:00 a.m.

The defendant filed its list of exhibits (Docket no. 49) and list of witnesses (Docket no.

50) for the December 4, 2015 hearing on November 27, 2015. Also on November 27, 2015, the

plaintiff filed its list of exhibits (Docket no. 52) and list of witnesses (Docket no. 51) for the

December 4, 2015 hearing. Defendant filed a bench memorandum for default judgment hearing

on December 2, 2015. (Docket no. 53). Plaintiff filed its objections to defendant's exhibit list

on December 2, 2015. (Docket no. 54). Also on December 2, 2015, defendant filed its

objections to plaintiff's list of witnesses and exhibits. (Docket nos. 55, 56). On Friday,

December 4, 2015, counsel for the parties appeared before the court to present evidence and

argument on plaintiff's motion for default judgment.

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default

judgment when "a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend." Fed. R. Civ. P. 55(a). Defendant failed to comply with the Order

entered on September 25, 2015. Based on defendant's failure to have substitute counsel make an

appearance on its behalf in a timely manner and following a hearing on October 16, 2015

(Docket no. 30), the Clerk of Court entered a default against defendant on October 19, 2015

(Docket no. 33).

A defendant in default admits the factual allegations in the complaint. *GlobalSantaFe*

*Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts

alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. On December 4, 2015, an evidentiary hearing was held on the issue of damages during which both sides introduced evidence and made arguments. (Docket no. 57). Following the evidentiary hearing, the plaintiff submitted a declaration in support of attorney's fees (Docket no. 58) and defendant submitted an opposition to the request for attorney's fees (Docket no. 62).

### Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Plaintiff alleges that this matter is properly brought in this court under 28 U.S.C. § 1332 based on complete diversity of citizenship and an appropriate amount in controversy. (Compl. ¶ 4). Plaintiff Aegis is a limited liability company, of which, Aegis Defence Services Ltd. (UK) is its sole member. (Docket no. 19). For the purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. *See, e.g.*, *Cent. West Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011). Aegis Defence Services, Ltd. (UK) is a United Kingdom company with its principal place of business in the United Kingdom. (Docket no. 19). Accordingly, for the purposes of diversity citizenship, Aegis is deemed to be a citizen of a foreign state. SIS is an Arizona corporation, with its principal place of business in El Paso, Texas. (Compl. ¶ 3). Thus, complete diversity exists between the plaintiff and defendant. Plaintiff's complaint also seeks a judgment in excess of $75,000. (Compl. ¶¶ 44, 48). Given these uncontested facts, this court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1332.

6

This court also has personal jurisdiction over the defendant because Virginia's long-arm statute authorizes the exercise of jurisdiction and defendant satisfies the "minimum contacts" test under the Due Process Clause of the Fourteenth Amendment. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Specifically, as noted in the complaint, SIS entered into a contractual agreement with plaintiff in this District and has caused injury in this District by an act or omission outside of this District. (Compl. ¶ 5). Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia. (Compl. ¶ 6).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendant, and that venue is proper in this court.

## Service

Pursuant to Fed. R. Civ. P. 4(h), a corporation, partnership, or other unincorporated association may be served in a judicial district of the United States (A) in the manner prescribed in Rule 4(e)(1) for serving an individual or (B) by delivering a copy of the summons and complaint to an officer, managing, or general agent, or any other agent authorized by law to receive service of process. Rule 4(e)(1) provides that an individual may be served in a judicial district of the United States by following state law for serving a summons.

The original summons issued on March 11, 2015 (Docket no. 2) was returned executed on March 18, 2015 (Docket no. 3) with an affidavit of service that indicates that on March 13, 2015, a process server personally served Marcina Rivera, Human Resources Director at SIS, at 221 North Kansas Street, El Paso, Texas 79901, with a copy of the summons, complaint, and attached exhibit. (Docket no. 3 at 2). In response to this service, initial counsel made an

appearance in this case on behalf of the defendant and filed an answer and counterclaim on April 3, 2015. (Docket nos. 5, 6).

Accordingly, the undersigned magistrate judge recommends a finding that the defendant was served properly with the summons and complaint.

## **Grounds for Entry of Default**

On September 10, 2015, defendant informed its prior counsel at Odin, Feldman & Pittleman, P.C that it was to no longer represent defendant in this action. (Docket no. 20-1). Accordingly, on September 14, 2015, Sally Ann Hostetler, Bruce Blanchard, and Jonathan Friedan of Odin, Feldman & Pittleman, P.C. filed a motion to withdraw as counsel for the defendant. (Docket no. 20). A copy of the motion to withdraw and notices of hearing were provided to the defendant. (Docket nos. 20–22). On September 25, 2015, the court granted the motion to withdraw. (Docket no. 24). Given that all discovery was to be concluded by December 11, 2015 and the final pretrial conference was set for December 17, 2015, the court directed that defendant had ten days for substitute counsel to make an appearance on its behalf and warned defendant that its failure to have substitute counsel make an appearance on its behalf may result in the dismissal of its counterclaim and the entry of default judgment against it. *Id.* A copy of the court's Order was sent to Garylene Javier, Integrated Systems Improvement Services, 1300 Pennsylvania Avenue, N.W., Suite 700, Washington, D.C. 20004.[2] Defendant failed to have counsel make an appearance on its behalf by the October 5, 2015 deadline. Indeed, twenty-one days elapsed after this court's Order, and thirty-six days elapsed after defendant terminated its prior counsel, before defendant had substitute counsel make an appearance in this matter on its behalf on October 16, 2015. (Docket no. 32).

---

[2] Luis A. Vega, defendant's Executive Vice-President, has indicated that Garylene Javier was defendant's contracts administrator and was defendant's primary contact with defendant's prior counsel at Odin, Feldman & Pittleman, P.C. (Docket no. 46-2, ¶¶ 2, 4).

8

On October 7, 2015, plaintiff filed a motion for entry of default and an incorporated memorandum in support (Docket no. 26) ("motion for entry of default") and noticed the motion for a hearing on October 16, 2015 (Docket no. 27). Plaintiff personally served defendant's Human Resources Director, Marcina Rivera, at defendant's El Paso location, with the motion for entry of default on October 8, 2015 (Docket no. 28-1) and the notice of hearing on October 9, 2015 (Docket no. 29-1).

On October 16, 2015, the court heard argument on plaintiff's motion for entry of default. At the October 16, 2015 hearing substitute counsel for defendant made an appearance. However, because this appearance was well beyond the deadline provided in the court's September 25, 2015 Order, the undersigned magistrate judge requested that the Clerk of Court enter a default as to defendant pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 31). The Clerk of Court entered default as to defendant on October 19, 2015. (Docket no. 33). After the default was entered, the defendant filed a motion to set aside the default that was briefed by the parties and argued on November 20, 2015. As explained during the hearing, the motion to set aside was denied because of undue delay, disobeying a court order, and prejudice to the plaintiff. (Docket no. 47). An evidentiary hearing on the issue of damages was then set for December 4, 2015. (Docket no. 48).

Based on the foregoing, the undersigned magistrate judge recommends a finding that the Clerk of Court has properly entered a default as to defendant.[3]

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendant is in default, it

---

[3] Defendant did not file an objection to the order concerning the entry of default or the order denying the motion to set aside the default under Federal Rule of Civil Procedure 72 or 28 U.S.C. § 636.

admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6). The following facts are established by the complaint filed on March 11, 2015. (Docket no. 1).

Plaintiff Aegis is a Delaware limited liability company with its principal place of business in McLean, Virginia. (Compl. ¶ 2). Defendant SIS is an Arizona corporation with its principal place of business in El Paso, Texas. (Compl. ¶ 3). Aegis is a leading security and risk management company that provides security services to the Unites States government. (Compl. ¶¶ 7–8). Aegis holds a prime contract with the United States Department of Defense in which Aegis provides private security services at Kandahar Airfield, Afghanistan. (Compl. ¶ 9) ("KAF Security Prime Contract").

Pursuant to the KAF Security Prime Contract, on January 23, 2015, Aegis reached an agreement with SIS in which SIS agreed to provide certain equipment, including 250 AK-47 rifles, to Aegis in Afghanistan. (Compl. ¶ 10; Compl. Ex. A at 2) ("Subcontract"). The Subcontract agreement price was $263,872, the expected delivery date was February 10, 2015, and the Subcontract specified that "time was of the essence." (Compl. ¶¶ 14, 15, 17). On January 23, 2015, Aegis wired $211,097.60 (80% of the agreed Subcontract price) to SIS. (Compl. ¶ 16).

SIS failed to deliver on the Subcontract's February 10, 2015 expected-delivery date. (Compl. ¶ 18). On February 14, 2015, SIS offered Aegis several options, including: (1) SIS would return all of the money paid by Aegis and the Subcontract would end or (2) SIS would procure the equipment from a local vendor and deliver it at a later date. (Compl. ¶ 20). Aegis choose the latter option. (Compl. ¶ 21). As part of this second option, SIS increased the Subcontract price by $7,336.00 to account for price changes for some of the equipment, demanded that Aegis wire the remaining 20% of the Subcontract price plus the increase, set the

new delivery date for the AK-47 rifles for February 21, 2015, and agreed to deliver the equipment to Aegis at Kandahar using ground transport from Kabul. (Compl. ¶ 22(a)–(d)). On February 17, 2015, Aegis wired the remaining 20% of the original Subcontract price, as well as the increase, totaling $60,110.40. (Compl. ¶ 23). Subsequently, SIS failed to deliver the contracted goods on February 21, 2015 and after promising to deliver on other dates, SIS again failed to deliver. (Compl. ¶¶ 24–25). On March 1, 2015, an SIS employee indicated that SIS was unable to control its sub-vendor and did not have accountability for the weapons in the possession of its sub-vendor. (Compl. ¶ 35(a)–(b)).

On March 1, 2015, Aegis provided SIS with a notice of termination and demanded a full refund based on SIS's failure to perform. (Compl. ¶ 36). SIS refused to issue the refund and instead contended that Aegis did not provide "logistics support" and threatened to charge Aegis storage costs for the alleged weapons it was holding for Aegis. (Compl. ¶¶ 37–38). As a result of SIS's failure to deliver the weapons, Aegis obtained substitute weapons and equipment at an increased price from other sources. (Comp. ¶ 39).

Given that the factual allegations alleged in the complaint are deemed admitted, the undersigned recommends a finding that plaintiff has established claims for breach of contract (Count I) and conversion (Count II).

## Measure of Damages

Plaintiff's complaint (Docket no. 1) and motion for default judgment (Docket no. 34) seek judgment in the amount of $271,208.00 against defendant, as well as the increased costs incurred in securing substitute goods, reasonable attorney's fees, costs, and pre- and post-judgment interest. The recommendations that follow focus on plaintiff's claim for breach of

contract, which is at the center of this case and for which the facts sufficient to support a finding of liability are deemed admitted.[4]

**Count I (Breach of Contract)**

Under Virginia law, the required elements for proving breach of contract are: "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Westminister Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 (1989) (quoting *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 13 (1969)). Plaintiff alleges that defendant breached the Subcontract by failing to deliver the equipment and weapons in February 2015 and failing to return the money plaintiff paid. (Compl. ¶ 42). Under the terms of the Subcontract, defendant agreed to provide certain equipment and 250 AK-47 rifles to plaintiff in Afghanistan by an expected delivery date of February 10, 2015 at a price of $263,872.00. (Comp. ¶¶ 10–11, 13–15). The Subcontract provides "Aegis reserves the right to cancel this Purchase Order or any portion thereof, to return any goods previously accepted or to procure the ordered goods from another supplier and charge to Seller any difference in pricing resulting there from together with other damages suffered by Aegis if delivery is not made when and as specified, time being of the essence." (Comp. ¶ 17, Ex. 1 ¶ 5).

On January 23, 2015, plaintiff wired 80% of the agreed Subcontract price, totaling $211,097.60 to defendant. (Compl. ¶ 16). On February 14, 2015, defendant indicated that it would deliver the goods for an increased price to the plaintiff at Kandahar, Afghanistan if plaintiff agreed to a modification and price increase, which plaintiff did. (Compl. ¶¶ 20–22).

---

[4] Moreover, as to whether plaintiff could be simultaneously entitled to relief on the claim of conversion, it is well settled that a party may not recover twice for one injury. *Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual."). The compensatory relief sought by plaintiff on the conversion claim is wholly inclusive of the relief sought by plaintiff on the contract claim. Thus, plaintiff's breach of contract claim is the only claim considered by the undersigned in making these proposed recommendations.

Under the modification, delivery was to occur on February 21, 2015. (Compl. ¶ 22(c)).

Accordingly, on February 17, 2015, plaintiff transferred the remaining 20% of the Subcontract

price plus the $7,336.00 price increase, for a total of $60,110.40, to defendant. (Compl. ¶ 23).

Defendant failed to deliver the contracted equipment and weapons in February 2015. (Compl. ¶

37). As a result, plaintiff terminated the agreement with defendant on March 1, 2015. (Compl. ¶

36). Plaintiff alleges that defendant has failed to return the $271,208.00 that plaintiff paid under

the Subcontract and modification, notwithstanding plaintiff's demands. (Comp. ¶ 37).

      Given the procedural posture of this case, the evidentiary hearing held on December 4,

2015, focused on what damages plaintiff is entitled to recover based on the defendant's failure to

perform under the Subcontract. Plaintiff contends that it agreed to pay the defendant

$271,208.00 for certain goods, that it paid the defendant the agreed upon amount, that the

defendant failed to deliver the goods, and as a result of defendant's failure to perform the

plaintiff incurred costs in obtaining the ordered goods from other suppliers in the amount of

$584,013.60 ($312,805.60 more than the amount contained in the Subcontract). Plaintiff also

argues that it is entitled to an award of the attorney's fees and costs incurred in bringing this

action and to pre-judgment interest.

      The defendant contends that plaintiff's recovery should be limited to the amounts that

plaintiff paid to the defendant under the Subcontract. (Docket no. 53). Defendant argues that

since the plaintiff terminated the Subcontract and demanded a full refund of the amounts paid,

the plaintiff is now precluded from recovering the costs of procuring the ordered goods from

another source under the terms of the Subcontract. This argument is based on the use of the

word "or" instead of "and" in the first sentence in paragraph 5 of the Subcontract stating that

"Aegis reserves the right to cancel this Purchase Order or any portion thereof, to return any

goods previously accepted or to procure the ordered goods from another supplier and charge to Seller any difference in pricing resulting there from together with other damages suffered by Aegis if delivery is not made when and as specified, time being of the essence." Given the language of the Subcontract, it appears clear that Aegis is entitled to cancel the Purchase Order or any portion thereof, to return any goods previously accepted, or to procure the ordered goods from another supplier and charge the defendant any difference in pricing. As shown in the March 1, 2015 notice of termination letter (Defendant's Ex. 3), Aegis terminated the Subcontract, demanded repayment of the $271,208.00 by March 3, 2015, and indicated that its attempts to work with the defendant were "[w]ithout waiving any rights or remedies under our Subcontract." Defendant failed to return the amounts that it had received from Aegis under the Subcontract and Aegis was required to obtain the ordered goods from other suppliers. The fact that Aegis had paid defendant for goods that it never received under the Subcontract does not restrict Aegis from asserting its rights to recover the excess amounts that it paid to procure the ordered goods from another supplier under the Subcontract.

Defendant also contends that the "cover costs" incurred by Aegis are not reasonable and should not be awarded in this case. (Docket no. 53, p. 3–4). The manner in which Aegis procured the goods that were to be supplied under the Subcontract following defendant's failure to perform, the cost to procure those goods, and the reasonableness of those costs was the primary focus of the evidentiary hearing on December 4, 2015.

At the evidentiary hearing, plaintiff's vice president of contracts, Katie Brasfield, testified concerning her involvement with the KAF Security Prime Contract that Aegis had with the Department of Defense to provide, among other things, a guard force for the perimeter security at KAF (Defendant's Ex. 9), the need to obtain various equipment (including 250 AK-47s) in a

14

short period of time to comply with Aegis' obligations under the KAF Security Prime Contract, the Subcontract with the defendant, the payments made to the defendant under the Subcontract, the defendant's failure to deliver the goods ordered under the Subcontract, and the efforts and costs incurred by Aegis in obtaining a portion of the goods that were to be supplied by the defendant under the Subcontract. During Ms. Brasfield's testimony plaintiff's exhibits 1 through 22 were discussed and admitted into evidence.

Following Ms. Brasfield's testimony, the defendant called Tabatha Chandler, corporate security officer, to testify concerning the efforts undertaken by the defendant to obtain the goods required under the Subcontract. Ms. Chandler testified that the 250 used AK-47s were originally to be obtained from a source in Bulgaria at a cost to the defendant of $400 each. The Subcontract price for Aegis was $560 for each AK-47. When efforts to import the weapons from Bulgaria stalled, and recognizing Aegis' need to obtain the weapons in order to comply with the KAF Security Prime Contract in a timely manner, she then attempted to obtain the weapons from sources already in Afghanistan and Pakistan. She testified that she was able to obtain these weapons from various sources located outside of Kandahar at a higher cost but that the defendant agreed not to increase the price to Aegis. Unfortunately, the defendant was not able to get those weapons delivered to Aegis in Kandahar in a timely manner and Aegis terminated the Subcontract. Ms. Brasfield testified that the costs incurred by Aegis in buying and leasing the replacement AK-47s were excessive ($1,500 verses approximately $500 per AK-47) and that she believed that they could have been obtained at a much lower cost.[5]

The defendant also presented the testimony of J. Patrick Bryan, a self-employed broker in military gear, including weapons. Mr. Bryan testified concerning the general availability of AK-47s, the cost of AK-47s, and the availability and costs of weapons similar to AK-47s. Mr. Bryan

---

[5] Defendant's exhibits 2, 3, and 9 were admitted into evidence during the evidentiary hearing.

did not testify concerning any quotes that he had received for supplying AK-47s to KAF and did not provide any specific information as to how much it would have cost to obtain those goods delivered to KAF in February 2015.

Through the testimony of Ms. Brasfield, Aegis established that it obtained a portion of the equipment and weapons that were to be supplied under the Subcontract from other sources at a total price of $584,013.60. (Pl.'s Exs. 2, 5–21). Specifically, in March 2015, plaintiff purchased seventeen (17) AK-47 rifles from A to Z Suppliers and Services for a total price of $25,500.00. (Pl.'s Exs. 5, 6). In February and March 2015, plaintiff purchased an additional ninety-four (94) AK-47 rifles from Innovative Afghan Logistics Services for $196,680.00. (Pl.'s Ex. 8). Additionally, from March 27, 2015 through September 31, 2015, plaintiff leased ninety-nine (99) AK-47 rifles from Kandahar Bagram Risk Management ("KBRM") Company for a total price of $198,336.60, which comprised $5,286.60 in leasing costs from March 27, 2015 through March 31, 2015 and six (6) months at $32,175 per month. (Pl.'s Exs. 9–15). Thus, from March 2015 through September 2015, plaintiff purchased and rented 210 AK-47 rifles for a total price of $420,516.60.

In October 2015, plaintiff leased twenty-three (23) AK-47 rifles for one month and seventy-six (76) AK-47 rifles for fifteen (15) days from KBRM for a total of $19,650. (Pl.'s Ex. 16). On October 30, 2015, plaintiff extended the lease of twenty-three (23) of the AK-47 rifles through February 2016 at a cost of $29,900.00. (Pl's Ex. 17). In place of the seventy-six (76) AK-47 rifles leased for only half of October, plaintiff purchased seventy-six (76) AK-47 rifles from A to Z Suppliers and Services for $110,200.00 in October 2015. (Pl's Ex. 7). Thus, from October 2015 through February 2016, plaintiff paid $159,750 in cover charges to lease twenty-three (23) AK-47 rifles for the full time period, lease seventy-six (76) AK-47 rifles for fifteen

days, and purchase seventy-six (76) AK-47 rifles. The total cover charges for the purchase and rental of the AK-47 rifles from March 2015 through February 2016 totals **$580,266.60**.

Finally, to cover for weapon holsters and AK-47 rifle slings that defendant failed to provide, on April 6, 2015, plaintiff purchased 130 AK-47 slings from K-Var Corp. for $3,065 (Pl's Exs. 18, 19) and on April 30, 3015, plaintiff purchased forty (40) weapon holsters from Operational Equipment & Logistics Solutions for $682.00 (Pl's Exs. 20, 21) (collectively the "non-AK-47-rifle cover charges"). The non-AK-47-rifle cover charges totaled **$3,747.00**.

In sum, plaintiff's non-AK-47-rifle and AK-47 rifle cover charges total **$584,013.60**. While the defendant believes these costs are excessive, having heard the testimony of Ms. Brasfield concerning the time pressure involved in obtaining the weapons, the need to insure that the weapons were of an appropriate quality, the logistical efforts needed to get the weapons to KAF, and the efforts that Aegis undertook to obtain those goods from alternative sources, the undersigned recommends a finding that Aegis acted in good faith and in a reasonable manner in obtaining those goods. Accordingly, the undersigned recommends that Aegis be awarded $584,013.60 as the cost incurred in procuring the ordered goods from other suppliers following the defendant's failure to perform under the Subcontract.

The complaint, plaintiff's motion for default judgment and incorporated memorandum in support, and the testimony and exhibits presented at the hearing before the undersigned magistrate judge on December 4, 2015 establish that plaintiff agreed to pay and did pay the defendant a total of $271,208.00 under the Subcontract for goods that were not delivered and that Aegis then incurred $584,013.60 in cover charges.

Based on the foregoing, the undersigned magistrate judge recommends a finding that plaintiff has established a claim of breach of contract against defendant that entitles it to a judgment in the amount of $584,013.60.

**Attorney's Fees and Costs**

Plaintiff claims that under section 6 of the Subcontract, plaintiff is entitled to an award for the reasonable attorney's fees and costs of this action. (Docket no. 1-1 at 5–6). Section 6 of the Subcontract provides: "[SIS] shall indemnify Aegis against any and all actions, suits, claims, or demands that may be made or brought against Aegis and also against all damages, costs and expenses (including reasonable attorney's fees) that Aegis may incur or become liable to pay by reason of Aegis using or possessing the goods covered by this Purchase Order by reason of [SIS's] non-performance under this Purchase Order or for Seller's breach of warranty." The defendant argues that this indemnification provision does not support the award of attorney's fees and costs for a mere breach of the Subcontract. (Docket no. 53, p. 5). There is no question that under the "American Rule" attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract provision specifically providing for the award of attorney's fees. In this case the testimony revealed that the Subcontract was prepared by Aegis and contained its "standard" provisions. Given the language in the Indemnification provision that it covers amounts that "Aegis may incur or become liable to pay **by reason of Aegis using or possessing the goods covered by this Purchase Order**" it does not appear that this provision would allow for an award of attorney's fees for all breaches of the Subcontract including a breach based on non-delivery of the contracted goods. (Docket no. 1-1 at 5–6, emphasis added). Accordingly, the undersigned recommends that no award of attorney's fees be made in this case and that the plaintiff be awarded costs in accordance with 28 U.S.C. § 1920.

**Prejudgment Interest**

In the complaint (Docket no. 1 at 7) and motion for default judgment (Docket no. 34 at 5–6), plaintiff seeks prejudgment interest. "Virginia law governs the award of prejudgment interest in a diversity case." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Pursuant to Virginia law, "if a contract does not fix an interest rate, the Court shall apply the rate of six percent per annum to calculate prejudgment interest." *Chesapeake Bay Diving, Inc. v. Delta Demolition Grp., Inc.*, No. 2:13-CV-640, 2014 WL 7140322, at *4 (E.D. Va. Dec. 12, 2014) (citing Va. Code §§ 6.1-330.54 and 8.01-382). The decision whether to award prejudgment interest is within the sound discretion of the trial court. *Wells Fargo Equip. Fin., Inc. v. State Farm Fire and Cas. Co.*, 823 F. Supp. 2d 364, 366 (E.D. Va. 2011). District courts "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate" when exercising this discretion. *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000). The two principal, competing rationales in a court's weighing of the equities are the notions that a party denied money to which it is rightfully entitled should be compensated for that loss, and in contrast, that a party should not be penalized when the legal dispute regarding the funds is *bona fide*. *Wells Fargo*, 823 F. Supp. 2d at 366–67.

In this case there was a *bona fide* dispute concerning the reasonableness of the costs incurred by Aegis in procuring the goods covered by the Subcontract. In addition, prior to the default being entered in this case, the defendant was asserting that Aegis had breached the Subcontract by failing to provide logistical support and that the defendant had incurred significant damages as a result of Aegis' non-compliance. Under the circumstances presented, the undersigned recommends that prejudgment interest not be awarded in this case.

## Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of plaintiff Aegis Defense Services, LLC and against defendant Integrated Systems Improvement Services, Inc. in the amount of $584,013.60 for the cover expenses relating to the Subcontract, with post-judgment interest at the rate prescribed by 28 U.S.C. § 1961 and costs pursuant to 28 U.S.C. § 1920. In addition, the undersigned recommends that the counterclaim asserted against Aegis Defense Services, LLC be dismissed in accordance with the Orders entered on September 25, 2015 and October 16, 2015. (Docket nos. 24, 31).

## Notice

By means of the court's electronic filing system, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 19th day of January, 2016.

/s/

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

20